*In re* SAIER ESTATE.

1. Contracts—Estates of Decedents—Consideration—Equity—Performance.

A contract whereby the prospective heirs divided their expected inheritances from testatrix and whereby one of the heirs agreed not to make a claim against the estate and which was signed by the testatrix and fully performed by all parties thereto is enforceable in the probate court, where the consideration given has not been returned by contestant and nothing appears to indicate a necessity for the exercise of equitable, as distinguished from legal, jurisdiction.

2. Estates of Decedents—Contract Between Prospective Heirs—Determination of Validity—Probate Court.

The validity of an agreement between the prospective heirs relative to the estate may be determined by the probate court having jurisdiction over the estate.

3. Wills—Contestant's Lack of Interest—Motion to Dismiss.

The matter of a contestant's lack of interest may be challenged by proponent's motion to dismiss in a will contest (CL 1948, § 702.24).

---

References for Points in Headnotes

[1, 2] 57 Am Jur, Wills §§ 1013–1015.
[3] 57 Am Jur, Wills § 797 *et seq.*
[4] 57 Am Jur, Wills §§ 775, 994.

4. Same—Motion to Dismiss—Jurisdiction—Lack of Interest—
Contracts.

 The probate court, in the first instance, and on appeal, the
 circuit court, had jurisdictional authority to entertain will
 proponent's motion to dismiss objection of contestant who
 had made an agreement with the testatrix and the other heirs
 not to make a claim against the estate (CL 1948, § 702.24).

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted April 12, 1955. (Docket No. 59, Calendar No.
46,364.) Decided June 6, 1955.

Harry E. Saier entered contest to allowance of
will of Jessie E. Saier, his mother. Previously a
settlement contract was entered into in which con-
testant assigned all his interest to estate. Probate
court dismissed contest. Appealed to circuit court
where, on motion, his contest was dismissed on rul-
ing that he was not an interested party. Contestant
appeals. Affirmed and remanded.

*John P. O'Brien, Claude J. Marshall* and *Robert
T. Arvidson,* for appellant.

*Gregg, Glassen, Parr & Rhead (H. W. Glassen,* of
counsel), for defendant estate.

Reid, J. Harry E. Saier, son of the deceased
Jessie E. Saier, appeals from an order of the circuit
court made on an appeal by Harry E. Saier from an
order of the Ingham county probate court dismissing
Harry E. Saier's contest and objections to the allow-
ance of the will of his mother, the deceased. The
probate court found that the contestant, Harry E.
Saier, is not an interested party within the meaning
of the statute, CL 1948, § 702.24 (Stat Ann § 27.3178
[94]), and dismissed contestant's contest in the pro-
bate court. On appeal the circuit court also granted
proponent's motion to dismiss Harry E. Saier's ob-

jections to the will. The circuit court further remanded the matter to the probate court for further administration according to law.

Both the probate judge and on appeal to the circuit court, the circuit judge, found that the contestant was not an interested party within the meaning of the statute because the contestant by contract had assigned all interest he had in the estate of his mother to said estate, the contract being signed by several heirs and the testatrix herself.

The contract referred to was dated November 12, 1949, and is as follows:

### "Agreement And Release

"Whereas the Parties Hereto Signing have heretofore had several discussions about rights, duties and obligations, and,

"Whereas it is their present desire to settle any and all property rights, actions, causes of actions, claims and demands, and

"Whereas each has conferred at length with their respective attorneys and here and now admit that they are fully advised as to their rights and fully cognizant of the legal consequences of their actions heretofore,

"Now Therefore This Agreement Witnesseth:

"(1) The undersigned, Harry Saier shall forthwith pay the sum of $800 cash to Ruth Keast.

"(2) The undersigned Harry Saier shall forthwith pay the sum of $2,308 cash to Ed. Saier, the undersigned.

"(3) It is understood and agreed that the aforesaid Harry Saier hereby consents to and agrees to his mother, Jessie Saier transferring to Ed Saier the sum of $5,460 or property worth that amount or mortgages worth that amount from his possible share in the estate of said Jessie Saier and agrees further that this agreement shall be considered as and be effective as an assignment of that amount.

"(4) Said Harry Saier hereby agrees not to make any claim of any kind or nature against Jessie Saier or the estate of Jessie Saier either as creditor, heir or legatee and hereby assigns any interest that he may have against said Jessie Saier to the estate of said Jessie Saier.

"(5) Said Ed Saier, undersigned agrees to forthwith procure from Ruth and Dorothy, the daughters of Harry Saier quitclaim deeds to the farm now occupied by Harry Saier and Hazel Saier, said quitclaims to be to Hazel Saier and Harry Saier, jointly.

"(6) It is understood and agreed that Harry Saier shall assume and pay the present mortgage against said property, said mortgage being in the approximate amount of $1,750.

"(7) Harry Saier is to forthwith give to Dorothy, his daughter a promissory note in the sum of $1,050 payable on.or before August, 1950.

"(8) In consideration of the above provisions and others, Jessie Saier agrees that in addition to whatever share said Ed Saier has in her estate that she will deed or mortgage during her lifetime sufficient property to secure Ed Saier in the repayment to him of $5,460 which will come out of Harry's share in the estate whatever said share is.

"(9) Each by signing this agreement acknowledge full accord and satisfaction of any and all claims of whatsoever kind or nature, whether liquidated or unliquidated and does hereby release the other from any and all actions, causes of action, claims and demands, whether known or unknown at this time.

"(10) Said Harry Saier hereby releases any and all possible claims of any kind or nature which he might have under a will or by intestacy in the estate of Jessie Saier, the balance of said share to ~~remain in the estate and to~~ descend to Ruth and Dorothy ~~to the residuary legatees~~ in equal shares, share and share alike, *i.e.* the balance of ~~except that Jessie may will the balance of~~ Harry's share ~~in any way she sees fit.~~

"(11) It is understood and agreed that no further suits of any kind or nature shall be started and that no further remarks of a derogatory nature shall be made by the one against the other, whether said derogatory remarks be true or false and slanderous.

"(12) It is understood and agreed that every effort shall be made on the parts of all parties to avoid any further trouble and further that said Harry Saier will allow said Dorothy Saier to remove from their said farm such property as shall belong to said Dorothy Saier and likewise for Ruth Keast.

"(14) It is understood and agreed that this constitutes the full and complete agreement between the parties and that neither has any further claim or demand of any kind or nature, personal or real, wheresoever situated against the other, and that in signing this agreement each fully and completely releases the other from any and all liability of any kind or nature.

"In witness whereof we have hereunto set our hands and seals this . . . . . . day of November, A.D. 1949

"H. E. SAIER
"EDWARD H. SAIER
"HAZEL E. SAIER
"JESSIE E. SAIER
"
"                                                "

Under the will of October 27, 1948, Harry Saier was a coexecutor with his brother Ed Saier and was given 1/3 of his mother's estate. The 2 wills of January 6, 1950, and February 21, 1950, are identical except that Mr. Hood, a witness for the administrator, testified that a copy of the agreement was attached to the February 21st will. If the February 21, 1950 will was not admitted to probate for any reason then the next will would be that of January 6, 1950, which is identical to the February 21, 1950 will except that the contract was attached.

The contestant was represented by counsel before the time the contract was executed.

The objection filed by Harry E. Saier (hereafter referred to as contestant) charged that the making of the will "was induced by misrepresentation, fraud, undue influence and duress practiced upon said deceased," and also, "That said instrument purports, in part, to be executed pursuant to a certain contract, dated November 12, 1949, which contract was null, void and of no force for the reason that it was made without consideration, that it was illegal and contrary to public policy and was induced by misrepresentation, fraud, deceit and undue influence practiced upon said deceased." Contestant Harry E. Saier admits that "he did receive back his farm upon payment of $2,308 to Edward Saier, which the latter held under trust agreement and which he, had repeatedly refused to return to Harry Saier."

It is the claim of contestant that the probate court was without authority to hold that he was not an interested party by reason of the agreement of November 12, 1949, because:

"1. The will had not been admitted to probate;

"2. No advancement was received from the ancestor under said agreement as to bring such an agreement within the term of the statute relating to advancements;*

"3. The validity of the agreement, as well as the will itself, had been challenged by contestant."

Upon the hearing of the matter in circuit court, witnesses were sworn and examined. Lloyd D. Parr, one of the executors, was sworn on behalf of the estate and cross-examined by contestant's counsel. Also, Oscar J. Hood was sworn on behalf of the proponents of the will and cross-examined by contestant

---

* See CL 1948, §§ 702.87–702.92 (Stat Ann 1943 Rev §§ 27.3178 [157]–27.3178[162]).—REPORTER.

Harry E. Saier.   Herbert Saier was produced by
contestant; his testimony was objected to by the
estate as to matters equally within the knowledge of
the deceased.*   The court permitted testimony to be
taken subject to the objection on behalf of the estate.
Harry E. Saier took the witness stand on his own
behalf; also Christine Castle was produced by and
examined on behalf of contestant and cross-examined
by the attorney for the estate.   It is conceded that
Harry Saier has paid the sum of $800 cash to Ruth
Keast and also that he has paid $2,308 cash to Ed
Saier, his brother, and contestant Harry E. Saier
admits that he has received a quitclaim deed to his
farm as specified in the agreement, and that he has
not returned the title to the farm to the grantors
from whom he received the title, nor made any
proffer of return of the title.

It is the claim of the contestant that the agreement
hereinbefore set forth is an agreement for the con-
veyance of an expectancy and is enforceable only in
a court of equity.

Among other things, the trial judge found as fol-
lows:

"As a general proposition, the law views with
favor an agreement between prospective heirs rela-
tive to the division of their expected inheritances,
especially, where, as in the case at bar, the ancestor
is a party to the agreement.   74 ALR 441, 442.

"The agreement in question is unambiguous, was
entered into upon good consideration, performed
fully by all parties except the contestant.   It is also
noteworthy that the contestant or any other person
to the agreement raised no question concerning its
validity until some time after the death of the tes-
tatrix, which occurred approximately 18 months
after the agreement was signed.   This is important
because it appears affirmatively that the contestant

---

* See CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

had knowledge of the terms of the will, which as before stated embodied the agreement.

"The contestant * * * [concedes] that he has received the substantial consideration, a valuable farm, by virtue of compliance of the other parties to the contract. He has not and he does not now offer to return the consideration but wants to keep the farm and also get a share of the estate, a share which he has waived, assigned and sold by virtue of the agreement of November 12, 1949. It further appears that the share of the estate which contestant would have received if the testatrix had died intestate is in fact going to his 2 daughters, the said Dorothy and Ruth."

The contract having been fully performed on the part of the other parties to it, aside from contestant, and being also signed by the deceased, and the contestant still retaining the consideration, the farm, there seems to be no ground for holding that as things now stand, the contract should be enforceable only in equity. Contestant Harry E. Saier has not appealed to the equity court to exercise its jurisdiction over the contract which he signed, and there is no good reason for permitting him to drive the other parties to the agreement into a court of equity. No petition is involved for the granting of the peculiar relief which could be granted only by a chancery court. Nothing appears in the record to indicate a necessity for the exercise of equitable as distinguished from legal jurisdiction.

In *Bean* v. *Bean*, 144 Mich 599, we held that the proponent of the will was not obliged to bring suit in equity to enforce the agreement of the heirs that the later of 2 wills should be probated and the property distributed in accordance with the earlier will, but was entitled to have the validity of the agreement and the effect of it determined in the probate

court and on appeal from the probate court, in the circuit court.

In *In re Elliott's Estate,* 285 Mich 579, we say (syllabus 1):

"In a will contest the matter of a contestant's lack of interest may be challenged by proponent's motion to dismiss."

The probate court in the first instance and on appeal, the circuit court, had jurisdictional authority to entertain the motion to dismiss contestant's objections.

The order of the circuit court granted proponents' motion to dismiss contestant's objection. That order of the circuit court is affirmed. The matter is remanded to the circuit court for a remand to the probate court for further proceedings. Costs to the proponents.

BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.

CARR, C. J., did not sit.